MRS. JOHN TON *et al.*

*v.*

THE CITY OF CHICAGO.

*Opinion filed June 23, 1905.*

1. SPECIAL ASSESSMENTS—*city has discretion as to making local improvements.* In passing ordinances for making local improvements by special assessment the city council is clothed with discretion to determine what improvement is required, its nature and character, when it shall be made and the manner of its construction; and such discretion, when honestly exercised, is not reviewable by the courts.

2. SAME—*when court may look beyond face of ordinance.* If it is made to appear that a special assessment ordinance is unreasonable or oppressive, or if, from evidence *aliunde* or otherwise, it appears the ordinance was passed in a particular manner as an evasion of law, courts will look beyond the mere face of the ordinance to its effect and operation and judge it accordingly.

3. SAME—*limits of powers of board of local improvements.* The power of the board of local improvements ends with its submission to the council of the ordinance for the proposed improvement with its recommendation and estimate, at which time the discretion of the city council begins.

4. SAME—*what is not ground for holding that several improvements were parts of one scheme.* The mere fact that two or more improvements of the same character, aggregating over $100,000 in cost, are so related to each other in point of locality that they might

have been included in one scheme, is not ground, of itself, for holding the ordinance invalid as an evasion of section 11 of the Improvement act, requiring ordinances for improvements costing over $100,000 to be referred and published. (*Kerfoot* v. *Chicago,* 195 Ill. *229,* distinguished.)

APPEAL from the County Court of Cook county; the Hon. ORRIN N. CARTER, Judge, presiding.

SAMUEL J. HOWE, for appellants.

ROBERT REDFIELD, and FRANK JOHNSTON, Jr., (EDGAR B. TOLMAN, Corporation Counsel, of counsel,) for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

This is an appeal from a judgment of the county court of Cook county confirming a special assessment levied to pave a system of streets in the city of Chicago.

But one question is raised on this record. Appellants contend that the system of streets that is provided for in the improvement under the ordinance in question was originally part of a scheme for improving a much larger system and originated at the time that other improvements were recommended and made, and therefore should have been made under one ordinance and referred and published.

It appears from the record that on September 24, 1900, three ordinances were recommended by the board of local improvements for the paving of the streets in question, together with other streets in the same portion of the city, and that the aggregate cost of the three improvements was $157,500. The record discloses, however, that the three ordinances were passed at different dates. The first ordinance was passed February 11, 1901, and the assessment was made and confirmed and the work completed, and the assessment is in process of collection. The second ordinance was passed June 24, 1901, and on February 24, 1904, repealed and a new recommendation made and new ordinance

substituted and passed, under which the assessment has been confirmed. The third ordinance was originally passed on October 5, 1903. This ordinance was repealed December 11, 1903, and a new recommendation having been made for this improvement on June 27, 1904, a new ordinance, being the one in question, was passed by the city council on the same day. This new ordinance and recommendation included an additional street. The contention of the appellants is, that the three ordinances were all one system and originated at one time; that the cost of such system was largely in excess of $100,000, and the ordinance should have been referred and published as provided by section 11 of the act of 1897, in relation to local improvements, which was not done, and that the making of the three separate improvements was for the purpose of getting a system below $100,000 and avoiding the reference and publishing of the ordinance as provided by law..

A map of the three above systems was introduced in evidence, and shows different colors for the different systems and shows in what manner they connect. We have examined the map and the ordinances, and have derived much assistance from the use of the map in our consideration of the case.

The three ordinances provided for the paving with slag and limestone the streets named in them, and the pavement was all of the same general character. The first ordinance covered the streets between One Hundred and Thirteenth and One Hundred and Fifteenth streets and Indiana avenue and Wentworth avenue. The second ordinance provided for the streets between One Hundred and Eleventh and One Hundred and Thirteenth streets and Michigan avenue and Stewart avenue. And the third, or ordinance now in question, provided for the paving of streets between One Hundred and Seventh street on the north and One Hundred and Eleventh street on the south and Indiana avenue and Michigan avenue. When the three improvements are completed

the two first improvements will lie mainly side by side, and the third improvement extends north from the north-east corner of the second improvement, so that the three systems of improvements lie in somewhat of an L shape. No evidence was introduced except the ordinances and proceedings of record.

This court has uniformly announced and recognized the rule that in the passage of ordinances providing for local improvements the city council is clothed with power to determine what local improvement is required, its nature and character, when it shall be made and the manner of its construction. These are matters confided to the discretion of the city council, and that discretion, when honestly and reasonably exercised, cannot be reviewed in the courts. (*Myers* v. *City of Chicago,* 196 Ill. 591; *Walker* v. *City of Chicago,* 202 id. 531; *English* v. *City of Danville,* 150 id. 92; *Vane* v. *City of Evanston,* id. 616; Dillon on Mun. Corp.—4th ed. —sec. 94.) If, however, it should be made to appear that the ordinance is unreasonable or oppressive, or if, from evidence *aliunde* or otherwise, it appears that the ordinance was passed in a particular manner for the evasion of the law, the courts will look beyond the mere face of the ordinance to its effect and operation and judge it accordingly. *Kerfoot* v. *City of Chicago,* 195 Ill. 229; *Ligare* v. *City of Chicago,* 139 id. 46.

Looking at the record in this case, we find that the board of local improvements saw fit to recommend at the same time three separate ordinances for the three improvements which it is here claimed are involved in one scheme. While the law is that an improvement shall originate with the board of local improvements, that board has no other power than that of proposing the improvement, and submitting an ordinance, with its recommendation and estimate, to the city council for its action, when the discharge of its duty and the exercise of its discretion begin. When these three ordinances were submitted to the city council, acting, as we think,

within its discretion it saw fit to pass only one of them, which it did on February 11, 1901, and an assessment was made under that ordinance and the improvement was completed. Subsequently, on June 24, 1901, an ordinance for the second improvement was passed. Nothing was done under it, but on February 24, 1904, it was repealed by the city council and a new recommendation made by the board of local improvements for the re-enactment of the same or a similar ordinance, and on the same day of the repeal of the ordinance formerly passed a new ordinance was passed and the assessment confirmed under it and the work entered upon. The ordinance for the third, being the improvement now complained of, was not passed until October, 1903, and a petition was filed for the assessment under that ordinance, but in December, 1903, the ordinance was repealed. Later a new recommendation was made under this ordinance, adding a portion of the street or streets to it that was not included in the original ordinance, and under this latter recommendation and a new estimate the ordinance now being proceeded under was passed in June, 1904.

It may be that if the city council had seen fit to include all these improvements under one ordinance as of the date of the passage of the first ordinance for the first improvement its action would have been upheld under the authority of *City of Springfield* v. *Green,* 120 Ill. 269. In that case the ordinance was assailed on the ground that it embraced more than one improvement, and we there said (p. 273) : "While many streets and parts of streets are embraced in the scheme of improvement adopted by the city, yet we regard them all as but parts of the same improvement. The city authorities, in adopting the ordinance, must have found, as a matter of fact, that these streets and parts of streets were so similarly situated with respect to the improvements proposed to be made as to justify treating them as parts of a common enterprise and single improvement, and from the record before us we think they were justified in doing so." In the case at

bar the city council seemed to be of the opinion that these improvements were separate and distinct and should not all be made at the time of the presenting of the original proposals, and we must assume that sufficient reason appeared to the council for authorizing or directing one of them to be made at that time and the others at subsequent and different dates.

In consideration of the making of local improvements it must be apparent that the time when an improvement should or ought to be made is an important element to be taken into account by the city council. At the time of the proposal or recommendation the council may be of opinion that the territory in which it is proposed to make the improvement is not in such stage of advancement, as to either residences or business, as to require it, or that improvements already made are such as for a time. will subserve the public requirements, or that the financial condition of the city, which must bear the cost of street intersections and other expenses incidental to the making of improvements, is such that it may not be advisable or feasible to then make the improvement. From these considerations, among others, has arisen the rule that the time when an improvement shall be made is left to the discretion of the city council. To hold that simply because two or more improvements of the same character are so related to each other in point of locality that they could as well be included in one scheme or ordinance, and that the failure to do so would render the ordinance void, would be to ignore the discretion of the city council as to the time when an improvement should be made or to strip it altogether of the power of exercising that discretion.

There is no similarity between this case and the case of *Kerfoot* v. *City of Chicago, supra.* There three ordinances were passed for the improvement of the same street in precisely the same manner, merely dividing it into three connecting sections. The three ordinances were passed upon the same date, and we were of opinion that the proceedings

showed, upon their face, that the three ordinances provided for but one improvement, and so held it to be. In that case we said (p. 231) : "In this case the entire improvement contemplated was in a single street, of the same material and character throughout, and it cannot be doubted that the ordinances were mutually dependent. They were recommended and passed as parts of the same scheme. · It is not probable that the two ends of the improvement would have been provided for with the center section left out, or that if the section next to State street were omitted either of the others would be authorized or constructed. The board and council had only one continuous improvement under consideration, and it came within the terms of the statute." Just the reverse of what was said in the *Kerfoot case* appears in the case at bar. Each of the improvements was made, but not authorized at the time of the recommendation. One was authorized without the other two and the second was authorized without the one in question, so that it cannot be said from this evidence that in the minds of the council it was all one scheme and that each ordinance was dependent upon the other, and that one would not have been made without the other.

The case of *Ligare* v. *City of Chicago, supra,* grew out of an ordinance purporting to be for the purpose of widening Archer avenue. So far as appeared from the face of the ordinance authorizing the improvement it was an entirely proper exercise of the powers of the city through its council, because, so far as could be told from the ordinance itself, the street was to be widened for public purposes. In the proceedings for condemnation, however, objections were filed by Ligare, and it was pointed out that though, on its face, the ordinance purported to be for a public purpose, it was in fact for the purpose of using the name of the city in the condemnation proceedings to acquire land not for public use, but for the use of a certain railroad company, and in support of that objection it was shown that on the same day of the passage

216-22

of the ordinance for the widening of the street another ordinance was passed which proposed to cede to the railroad company the use of the ground that was to be acquired by the improvement, and that the proceedings for condemnation, and all other proceedings for the acquirement of the territory, were to be paid for by the railroad company. And so it was held in that case that the court would look to both of the ordinances and construe them as one scheme, which scheme we held to be unlawful and the ordinance was declared void. We do not regard that case as controlling in the case at bar, either upon any similarity of facts existing between the two or upon any principle therein announced. While the territory covered by the three ordinances in question was contiguous property, it does not follow that its condition was such as justified or required the improvement of all that was covered by the three ordinances at the same time. We are not advised what particular consideration moved the council to determine that one should be granted and acted upon in February, 1901, and another in June, 1904, but with nothing more appearing than the similarity of the improvement and the contiguity of the territory, we cannot, from these facts alone, declare that the council was either moved by improper motives or was acting contrary to law.

One of these improvements was completed and the assessment practically paid, in the other the work was in progress at the time of the hearing, and in the one at bar the assessment was confirmed. The situation is so complex that we would not feel warranted in holding the present ordinance void upon the ground contended for, unless it was made very clearly to appear to be so. Upon a full consideration of the record we are of opinion that it cannot be said, as a matter of fact or law appearing from this record, that the three improvements were but one scheme and that the court erred in confirming the assessment.

The judgment of the county court will be affirmed.

*Judgment affirmed.*