cerned? This question the trial judge was called upon to determine, as both parties, by requesting the direction of a verdict, had consented that it should be withdrawn from the jury. I think that the trial judge decided it correctly. No harm could possibly have been done to the defendant by receiving in evidence its annual report.

The judgment should be affirmed. All concur.

(1 App. Div. 257.)

GLEASON et al. v. PEERLESS MANUF'G CO. et al.

(Supreme Court, Appellate Division, Second Department. February 4, 1896.)

1. ORDINANCES—EXTENT OF VETO POWER.
    Under Long Island City Charter (Laws 1871, c. 461), tit. 3, c. 1, § 5, providing that "every legislative act of the common council shall be by resolution or ordinance, and every ordinance or resolution shall, before it shall take effect, be presented" to the mayor for approval, the veto power is not limited to legislative acts.

2. SAME—LEGISLATIVE ACT.
    An ordinance determining the lowest bid for furnishing rubber hose, and awarding a contract therefor, is a "legislative act," within Long Island City Charter (Laws 1871, c. 461), tit. 3, c. 1, § 5, requiring such acts to be submitted to the mayor.

3. SAME—PASSAGE OVER VETO.
    Under the charter of Long Island City (Laws 1871, c. 461), providing that, when an ordinance is returned by the mayor with his veto, the board, "at the next regular meeting thereafter," shall reconsider it, and that, if it shall pass by a vote of four-fifths of the members "elected to the board at such regular meeting," it shall take effect, an ordinance passed over the veto at the meeting to which it was returned was void.

Appeal from special term.

Action by Patrick J. Gleason and others against the city of Long Island City and the Peerless Manufacturing Company. From a judgment for plaintiffs, defendant company appeals. Affirmed.

Argued before PRATT, CULLEN, BARTLETT, and HATCH, JJ.

A. T. Payne, for appellant.

George W. Stephens, for respondents.

CULLEN, J. This is a taxpayers' action, brought to restrain the payment by Long Island City to the Peerless Manufacturing Company, of New York, of the purchase price of some rubber hose. Proposals for furnishing such hose were advertised for, in answer to which the Peerless Company made its bid. The bid was not the lowest, but the common council, by resolution, awarded the contract to the Peerless Company, and directed the mayor and commissioner of public works to execute it. This resolution the mayor vetoed. It was returned to the common council with the mayor's objections on March 6, 1888, and at the same meeting the common council assumed to pass it over the mayor's veto. The trial court held that in determining, under the charter of Long Island City, who was the lowest bidder, the common council acted judicially, and the contract made by it could not be impeached for any error of the common council in that respect. It further held, however, that the resolution awarding the contract was void, because the

action of the common council upon the mayor's veto was taken at the meeting at which the resolution was returned, and not at the next regular meeting.

On this appeal the defendant contends that the action of the common council in awarding the contract was not subject to the veto power of the mayor. The provisions of the charter (chapter 1, tit. 3, §§ 5, 6; Laws 1871, c. 461) are:

"Every legislative act of the common council shall be by resolution or ordinance, and every ordinance or resolution shall, before it shall take effect, be presented, duly certified, to the mayor for his approval.

"The mayor shall return such ordinance or resolution to the board, within ten days after receiving it, or at the next meeting of the board thereafter."

It is urged—First, that by these provisions only legislative acts are required to be submitted to the mayor for approval; and, second, that the award to the Peerless Company of the contract in question was not a legislative act. We agree with neither proposition. The language of the charter is not every "such" ordinance or resolution, but "every ordinance or resolution shall, before it shall take effect, be presented to the mayor for his approval." The fact that the direction that ordinances and resolutions shall be submitted to the mayor is found in immediate association with the provision that legislative acts shall be by resolution or ordinance is not sufficient to limit the comprehensiveness of the terms "every ordinance or resolution."

In the charter of the city of Brooklyn (chapter 863, Laws 1873) the enactment is that "every ordinance or resolution of the board of aldermen * * * shall, before it takes effect, be presented * * * to the mayor." Under this provision it has been repeatedly held that the mayor could veto appointments or elections to office, as well as legislative resolutions. Cassidy v. City of Brooklyn, 60 Barb. 105; Id., 47 N. Y. 659; People v. Schroeder, 12 Hun, 413; Id., 76 N. Y. 160.

In the opinion delivered by Judge Miller, in the court of appeals, he says, referring to the acts of the common council:

"The right to veto ordinances and resolutions clearly extended to all acts of that body, whether legislative or otherwise; and in no sense can the provision [of the charter] in the act of 1873, constituting the common council, be construed as interfering with the power of the mayor to interpose his objection to the appointment of the relator. The mayor had no right to act as a legislator, but he retained in full force the right to disapprove of all ordinances, acts, and resolutions which did not meet his approval." 76 N. Y. 160.

The argument that the action of the common council under discussion was not legislative proceeds, in our opinion, on a failure to bear in mind that words are often used in different senses. The court below held that, in determining who was the lowest bidder, the common council acted judicially. The same rule was held in the case of Gaslight Co. v. Donnelly, 93 N. Y. 557. The same expression is to be found in Wilson v. Mayor, etc., 1 Denio, 595, and Mills v. City of Brooklyn, 32 N. Y. 489.

In this class of cases the term "judicial" is not used in the sense of appertaining to the judiciary or the administration of justice, but as indicating the exercise of discretion or judgment as dis-

tinguished from what is purely ministerial. It is not a thing distinct from legislative action, but, on the contrary, the necessary concomitant of all good legislation. Nor should the legislative power of the common council be construed as confined to laws prescribing general rules of conduct for individuals or for the regulation of the city departments. A large part of all legislation is necessarily administrative in a certain sense. This is particularly true of the legislatures of municipal corporations, whose power to prescribe by-laws or rules of conduct is very limited. The main work of all such bodies is to act on the administration of local affairs, provide what improvements shall be made, what streets opened, how water shall be furnished to the inhabitants, and matters of this nature. The action of the common council on all these subjects we consider legislative.

The direction of the charter is that, when an ordinance or resolution shall have been returned to it, "the board, at its next regular meeting thereafter, shall proceed to consider the same, and if, on consideration, it shall pass by a vote of at least four-fifths of all the members elected to the board at such regular meeting, it shall take effect." We see but little room for discussion of the proposition that the action of the board must be taken at the next regular meeting, for the provision is not only that it shall be considered at that meeting, but it shall pass the board by the prescribed vote at that meeting. It is argued that this was intended to prevent delay in the action of the common council upon the veto, and that, if such action be taken before the next regular meeting, it is as valid as if taken at that time. But there is nothing in the statute that gives countenance to the claim that the time prescribed for the action was any more intended to prevent dilatory than it was hasty action. If we consider the matter from the standpoint of public interest, we think the danger from the one fully as great as from the other. There is but one safe way to construe this statutory provision; that is, according to the plain meaning of the language employed. Construed by this standard, it condemns the action of the common council as void.

Judgment appealed from should be affirmed, with costs. All concur.