OPINION OF THE COURT
Ira Gammerman, J.
This is a motion seeking an order enjoining Mayor Edward I. Koch, Housing and Preservation Development Commissioner Anthony B. Gliedman, and Deputy Rent and Housing Maintenance Commissioner Dainiel W. Joy, from taking any action to implement Local Law No. 20 of 1980, the so-called *541 "fuel pass-along bill”, enacted by the city council on April 17, 1980. The motion is made by eight members of the New York City Council (one of whom has since resigned) and a rent-controlled tenant, all of whom have instituted an action for a declaratory judgment declaring Local Law No. 20 null, void and invalid.
This litigation appears to be a continuation of the legislative battle waged against this measure by plaintiff council members. Inasmuch as the legislation under attack will result in a total annual rent increase of $40,000,000 for approximately 300,000 rent-controlled tenants in New York City, many of whom are plaintiff council members’ constituents, the court can well understand the decision on the part of plaintiffs to institute this action. Indeed, even before the effective date of the legislation and before the court has had an opportunity to act on plaintiffs’ challenge, owners and managers of rent-controlled buildings have illegally attempted to extract the increases provided for in the act.
Local Law No. 20 (Intro No. 724B prior to its passage) was reported out of the committee on housing and buildings on March 27, 1980, and passed by the city council on April 17, 1980, by a vote of 23 to 20. Plaintiffs do not challenge the validity of the council’s vote approving the bill, but rather the manner in which the housing and building committee was convened on March 27, 1980, as well as a vote of the council on April 17, 1980, overriding a ruling of City Council President Carol Bellamy.
The committee on housing and building was originally scheduled to meet on March 31, 1980, to consider Intro. No. 724B. (The bill had previously been on the floor of the council, but was referred back to committee, apparently because its sponsors did not feel confident of enough votes for passage.) The chairman of the committee, Thomas Mantón, decided on March 26, 1980, to reschedule the meeting for the following day, because March 31, 1980, was both the eve of Passover and eve of a possible transit strike. The full council was already scheduled to meet on the 27th, and this coincidence of the committee meeting and the council session called rule 7.30b of the council into play. That rule provides that: "No committee meeting shall be convened on the day of a stated or special meeting of the Council unless the item to be considered by such committee will, out of necessity, be proposed as a General Order for that day, or such committee meeting is *542 called with the consent of 2járds of the members of such committee.”
Plaintiffs argue that rule 7.30b was not complied with, in that the committee meeting was not called with the consent of two-thirds of its members, anjd in that Intro. No. 724B was not, out of necessity, proposed as a general order for consideration by the council on March 27, 1980.
Further, it is contended that the agenda for the meeting of March 27, 1980, was not distributed five days prior to the convening of the committee, ¿s required by subdivision d of the rule which provides: "Written agenda for committee meetings shall be prepared and distributed as complete as practical to all members of the committee at least five days prior to the call of such meeting.” The Committee overruled objections made by plaintiffs Michels and Friedlander on these grounds by a vote of 5 to 2. Later that day, the full council rejected the challenge to the committee meeting 25 to 9, with 3 not voting.
On April 17, 1980, prior to council’s enactment of Intro. No. 724B, a ruling was requested from the council president, Carol Bellamy, that Intro. No. 724B was not properly before the council because of the failure to comply with rule 7.30 in convening the housing and building committee on March 27. The council president ruled in favor of the challenge, but her determination was then overturned by a vote of the council, 28 to 12.
Dealing first with subdivisioiji d of the rule relating to the distribution of agendas, it is apparent that committee meetings can be and are convened on less than five days’ notice. It would not be possible for agendas listing all matters to be considered to be distributed five days in advance on all occasions. Indeed, the rule itself refers to agendas "as complete as practical”. Obviously, if the meeting of March 27, 1980, was properly called the previous day, it would not be possible to distribute the agenda five days in advance. Plaintiffs’ challenge on this basis is, therefore, without merit.
Their other challenges, however, require more serious consideration. The committee chairman, Thomas Mantón, conceded at the meeting of March 27, 1980, that the meeting had not been called with the prior consent of two thirds of its members. The fact that 6 of the 9 members subsequently gave their consent (i.e., ratified the calling of the meeting) does not satisfy the rule. Nor was there compliance with the other requirement of the rule, that the item to be considered be *543 proposed, out of necessity, as a general order for the council meeting that same day. The court does believe it necessary to pursue the tortured and sometimes confusing distinctions among the classification of items on the council agenda. Suffice it to say that Intro. No. 724B could have been placed on the council’s agenda as a general order for March 27, and was not.
Thus, were the court a member of the city council, it would have voted to sustain the ruling of Council President Bellamy on April 17. Whether this determination by the court mandates the relief sought, however, is a completely different question. Should the court override the decision of a substantial majority of the council that the committee meeting of March 27, 1980 was convened in accordance with the council rules, and as a result, declare the legislation passed by the committee and the council invalid?
Whenever political strategists seek a change from the arena of the Legislature to that of the judicial branch, the court must determine the extent to which it may properly intervene, particularly in a dispute relating to interpretation of an internal rule of procedure.
The fact that litigants are bitterly divided over a political issue is not in and of itself dispositive. As the Court of Appeals noted in Matter of Anderson v Krupsak (40 NY2d 397), the judiciary has interjected itself into the midst of such heated debates as those involving legislative reapportionment, legislative responses to the fiscal crisis, and discretionary emoluments for lawmakers.
Where compliance with statutory procedure is involved, the court acts well within its proper realm in deciding the contest. Political fortunes of varying magnitude may ride on interpretation of extremely technical statutory language. In Matter of Anderson v Krupsak (supra), for example, three appointments to the Board of Regents hinged on whether a meeting was properly adjourned from the hour set by section 202 of the Education Law. In Matter of Douglass (46 NY 42) a public spending measure was voided for publication in fewer newspapers than that required by the city charter. And in Keeney v Village of LeRoy (22 AD2d 159) a zoning ordinance was invalidated because of violation of the statutory requirements of the Village Law, including failure to enter the ordinance in the village’s minute book.
Questions of internal legislative procedure, as opposed to *544 statutory compliance, fall closer to the borderlines separating the legislative and judicial powers. Here the court must tread more lightly, particularly where the litigants seek invalidation of legislation. The Court of Appeals has indicated its reluctance to involve itself in purely internal legislative matters, absent a clear cut constitutional issue. For example, in reviewing the parliamentary maneuvers that preceded passage of the Stavisky-Goodman Law, the court noted that "It would be inappropriate for the courts to intervene to abrogate the Senate’s views as to the conduct of its own legislative procedures other than in some cases to enforce a constitutional proscription” (Matter of Board of Educ. v City of New York, 41 NY2d 535 541). Absent constitutional consideration or statutory interpretation, deliberative bodies are to be the final arbiters of their own internal procedure. (Matter of Gottlieb v Duryea, 38 AD2d 634, affd without opn 30 NY2d 807, cert den 409 US 1008.) Where a legislature has determined that it has complied with its own internal rules in enacting a bill, the court should not overturn that determination and invalidate the legislation.
Plaintiffs have cited a number of precedents to the contrary: Morris v Cashmore (253 App Div 657, affd without opn 278 NY 730); Armatage v Fisher (74 Hun 167); and Gleason v Peerless Mfg. Co. (1 App Div 257). In these cases, the court indeed concluded it should involve itself in a determination as to whether a legislative body had properly interpreted its own internal rules. None of these cases involved an attempt to invalidate legislation, and in light of more recent decisions by the Court of Appeals, Matter of Anderson v Krupsak (40 NY2d 397, supra) and Matter of Board of Educ. v City of New York (supra), this court is not persuaded that the cases relied on by plaintiffs enjoy sufficient vitality to support a motion for preliminary injunction.
To succeed on a motion for injunctive relief, the movant must demonstrate a strong likelihood of success on the merits. The court is constrained to conclude that plaintiffs have not met this burden and must, therefore, deny their motion.